UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC,<br><br>        Plaintiff,<br>  v.<br><br>RAVENSTAR INVESTMENTS, LLC, *et al.*,<br><br>        Defendants. | Case No. 3:16-cv-00638-MMD-WGC<br><br>ORDER |
| AND ALL RELATED CASES | |

**I. SUMMARY**

This is one of hundreds of cases filed in this district to quiet title following a foreclosure sale conducted by a homeowners' association under NRS 116.3116, *et seq.* (the "HOA Sale"), specifically regarding 6453 Caddo Court, Sun Valley, NV 89433 (the "Property"). (ECF No. 1.) Before the Court are: (1) Defendant Highland Ranch Homeowners' Association (the "HOA")'s motion for summary judgment on the crossclaims Defendant Ravenstar Investments, LLC ("Ravenstar") asserted against the HOA (ECF No. 118 (the "HOA's Motion"));[1] and (2) Plaintiff Nationstar Mortgage LLC ("Nationstar")'s motion for partial summary judgment on its quiet title claim and the counterclaims Ravenstar asserted against it (ECF No. 119 ("Nationstar's Motion")).[2] As further explained below, the Court will grant both motions. The Court will grant the HOA's Motion primarily because the evidence shows Ravenstar purchased the Property via a quitclaim deed without any warranties. The Court will grant Nationstar's Motion primarily

---

[1]Ravenstar filed a response (ECF No. 123), and the HOA filed a reply (ECF No. 127).

[2]The HOA (ECF No. 120) and Ravenstar (ECF No. 124) filed responses. Ravenstar also joined the HOA's response. (ECF No. 125.) Nationstar filed a combined reply. (ECF No. 128.)

because following through on Nationstar's predecessor-in-interest's tender offer would have been futile.

## II.     BACKGROUND

### A.     Factual Background

The following facts are undisputed.[3] (ECF No. 124 at 2 ("Ravenstar hereby incorporates Nationstar's Statement of Undisputed Statement of Material Facts as set forth in Nationstar's Motion for Summary Judgment[.]").) Kyle Natenstedt (the "Borrower") purchased the Property in 2004 with a $189,989 loan. (ECF No. 119-1 at 2- 4.) The deed of trust associated with the loan (the "DOT") was assigned to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP ("BAC") in 2010. (ECF No. 119-2.) BAC merged into Bank of America, N.A. ("BANA") (ECF No. 119-3), and BANA assigned the DOT to Nationstar in 2013 (ECF No. 119-4 at 2).

The Borrower fell behind on his payments to the HOA, and the HOA recorded a notice of delinquent assessment lien on the Property through its counsel Gayle A. Kern. (ECF No. 119-5.) The notice of delinquent assessment was followed by the statutorily required notice of default and election to sell, and three notices of sale. (ECF Nos. 119-6, 119-7, 119-8, 119-10.)

In response to the notice of sale filed in March 2013 (ECF No. 119-10), BANA's counsel, Rock K. Jung, sent Kern a letter requesting the amount of the HOA's superpriority lien, offering to pay that amount upon presentation of adequate proof from the HOA. (ECF No. 119-11 at 2-3, 6-7.) Kern wrote back, refusing to provide the

---

[3]"Nationstar requests the court take judicial notice of Exhibit A, B, C, D, E, F, G, H, I, J, N, P, Q, R and S pursuant to Federal Rule of Evidence 201." (ECF No. 119 at 5.) "Ravenstar does not dispute the Court taking judicial notice of Exhibits A-J and N, P, Q, R, and S." (ECF No. 124 at 2.) The Court takes judicial notice of these exhibits. (ECF Nos. 119-1, 119-2, 119-3, 119-4, 119-5, 119-6, 119-7, 119-8, 119-9, 119-10, 119-14, 119-15, 119-16, 119-17, 119-18, 119-19.) *See also Ditech Fin. Servs. LLC v. Highland Ranch Homeowners Ass'n*, Case No. 3:16-cv-00194-MMD-WGC, 2019 WL 4393357, at *2 (D. Nev. Sept. 12, 2019) ("a court may take judicial notice of a government agency's records and other undisputed matters of public record under Fed. R. Evid. 201") (citing *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004)).

superpriority amount, but stating that BANA could pay off the HOA's lien for $7,210.34. (*Id.* at 9.) Kern went on to write, "[b]ased on your past practices I anticipate you may calculate an amount equivalent to the 9-months of assessments, costs, expenses and fees. However, partial payment of the lien will not release the full lien and will not stop the Association's possible foreclosure." (*Id.* at 9-11.) Kern also testified at her deposition that she would not have accepted a payment from Mr. Jung for nine months of assessments if the check were accompanied by an assertion that the payment satisfied the lender's obligation to the HOA in full. (ECF No. 119-12 at 36-37.) And Mr. Jung testified consistently in his declaration prepared for another case, but proffered by Nationstar here, where he stated that, in his experience, Kern uniformly rejected checks for the superpriority lien accompanied by a condition that the check fully satisfied the lender's obligation. (ECF No. 119-14 at 2-3.)

Kern held the HOA Sale in April 2013. (ECF No. 119-15.) The HOA purchased the Property from itself at the HOA Sale for $2,501. (*Id.* at 2.) The HOA later sold its interest in the Property to Ravenstar via quitclaim deed in November 2013. (ECF No. 119-17 at 2.) Ravenstar subsequently recorded another deed of trust on the Property, designating Nicholas Heathman as beneficiary, and purportedly securing a $25,000 loan. (ECF No. 119-18 at 2.)

### B.    Pertinent Procedural History

In addition to the HOA and Ravenstar, Nationstar sued Kern (Gayle A. Kern & Associates, Ltd. d/b/a Kern & Associates, Ltd.), the agent who conducted the HOA Sale, and Heathman. (ECF No. 1 at 2, 7.) The Court dismissed Kern from this case after granting Kern's motion to dismiss. (ECF Nos. 69, 70.) In addition, Nationstar and the HOA settled their claims against each other. (ECF No. 137.) The live issues in this case have accordingly narrowed since its inception.

Heathman's status in this case is less clear than the HOA's and Kern's. The most recent order referencing Heathman is a minute order issued by U.S. Magistrate Judge Carla L. Baldwin granting one of his former attorney's motion to withdraw as counsel and


directing that the parties serve a copy of all documents subsequently filed on him at an address in Reno. (ECF No. 96.) That appears to be happening, (*see, e.g.*, ECF No. 119 at 18), but the parties otherwise do not refer to Heathman, and he has not participated in the briefing on the motions this order addresses. Normally, this would raise a question as to the status of Nationstar's claims against Heathman. However, because the Court finds Nationstar's DOT continues to encumber the property as described *infra*, and because the only claim Nationstar asserted against Heathman was its quiet title claim (ECF No. 1 at 7-12), Heathman's lack of participation in the pending motions is immaterial. As also explained *infra*, the Court finds that Nationstar is entitled to its requested injunctive relief of an order declaring that Ravenstar and Heathman's interests in the Property are subject to Nationstar's DOT—this order.

The following claims accordingly remain for adjudication. First, Nationstar's quiet title claim against Ravenstar and Heathman (ECF No. 1 at 7-12), and its claim for injunctive relief against Ravenstar (*id.* at 15-16). Second, Ravenstar's counterclaims for unjust enrichment and equitable mortgage against Nationstar. (ECF No. 14 at 8-9.) Third, Ravenstar's crossclaims against the HOA for unjust enrichment and equitable mortgage. (ECF No. 15 at 6-7.) Only Ravenstar asserts the counter and crossclaims, not Heathman. (ECF Nos. 14, 15.) As the pending motions (ECF Nos. 118, 119) address all these claims, and as explained in more detail *infra*, the Court will grant both motions, this order resolves all outstanding issues in this case.

### III.     LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could

4

find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

The Court first addresses the HOA's Motion, and then Nationstar's Motion.

### A. The HOA's Motion

As noted, the HOA moves for summary judgment on the unjust enrichment and equitable mortgage crossclaims Ravenstar asserted against the HOA. (ECF No. 118.)

1    The HOA generally argues that Ravenstar is a sophisticated purchaser who purchased
2    the Property along with several others via quitclaim deed, and Ravenstar got what it paid
3    for—whatever interest the HOA owned in the Property. (*Id.*) As to unjust enrichment,
4    Ravenstar counters that it paid the HOA "$22,500 based on the representation that
5    Ravenstar would own the Property free and clear of the First Deed of Trust[,]" and further
6    notes that it has subsequently paid for upkeep and HOA fees on the Property. (ECF No.
7    123 at 4-5.) As to equitable mortgage, Ravenstar simply states the Court may impose
8    one. (*Id.* at 5.) The HOA replies that Ravenstar's response amounts to a concession that
9    the Court should grant the HOA's Motion, as Ravenstar does not offer any evidence to
10   support the only real argument it makes in its response—that Ravenstar purchased the
11   Property based on the HOA's false representation it would own the Property free and
12   clear of the first deed of trust. (ECF No. 127 at 1-2.) The Court agrees with the HOA.

13   The Court begins with the HOA and Ravenstar's unjust enrichment arguments.
14   "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the
15   retention of money or property of another against the fundamental principles of justice or
16   equity and good conscience." *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev.
17   1992) (citing *Nev. Indus. Dev. v. Benedetti*, 741 P.2d 802, 804 n.2 (Nev. 1987)). The
18   essential elements of an unjust enrichment claim are: (1) a benefit conferred on the
19   defendant by the plaintiff; (2) appreciation by the defendant of such a benefit; (3)
20   acceptance and retention by the defendant of such a benefit; (4) "under circumstances
21   such that it would be inequitable for him to retain the benefit without payment of the value
22   thereof." *Unionamerica Mortg. & Equity Tr. v. McDonald*, 626 P.2d 1272, 1273 (Nev.
23   1981) (citation omitted).

24   While it is of course true that the HOA received the purchase price of the Property
25   at the HOA Sale from Ravenstar, along with any HOA fees, etc., Ravenstar subsequently
26   paid to the HOA, it is not inequitable for the HOA to retain that money. First, Ravenstar
27   purchased the Property from the HOA via a quitclaim deed that conveyed "all interest [the
28   HOA] may own, if any," in the Property. (ECF No. 118-1 at 112.) A quitclaim deed conveys

1    "only the grantor's interest, subject to valid title claims and encumbrances." *United States*
2    *v. Spahi*, 177 F.3d 748, 751 (9th Cir. 1999) (citation omitted). Second, the HOA's board's
3    consent approving the sale to Ravenstar reflects that Ravenstar purchased three
4    properties at the same time, including the Property, and states that Ravenstar was
5    purchasing the HOA's "claim for delinquency of assessments, attorney's fees and costs,
6    late fees, foreclosure fees and costs, [and] transfer fees." (ECF No. 118-1 at 110.) Third,
7    Ravenstar's statement that it purchased the Property based on the HOA's false
8    representation that it was purchasing the Property free and clear of any deed of trust is
9    not supported by citation to any evidence. (ECF No. 123 at 4.) *See also, e.g.*, *Archuleta*
10   *v. Corr. Corp. of Am.*, Case No. 2:15-cv-01608-MMD-VCF, 2021 WL 308593, at *5 (D.
11   Nev. Jan. 29, 2021) ("attorney argument is not evidence") (citation omitted). Indeed, the
12   evidence proffered by the HOA demonstrates that it is Ravenstar's statement in its
13   response to the HOA's Motion that is false. Both the quitclaim deed and the board consent
14   proffered by the HOA show that Ravenstar was purchasing only whatever interest the
15   HOA had in the Property, and nothing more. (ECF No. 118-1 at 110, 112.) In sum, it is
16   not inequitable for the HOA to hold onto the money Ravenstar has paid to it. Ravenstar's
17   unjust enrichment crossclaim against the HOA fails as a matter of law, and the Court will
18   grant the HOA's Motion as to this claim.

19   Moving to the HOA and Ravenstar's equitable mortgage arguments, "[a]n equitable
20   mortgage may be imposed where 'the parties intended to create a mortgage.'" *Las Vegas*
21   *Dev. Grp., LLC v. Yfantis*, 173 F. Supp. 3d 1046, 1059 (D. Nev. 2016) (quoting *Topaz*,
22   839 P.2d at 612)." "'A mortgage is usually considered to be a nominal conveyance, held
23   in abeyance, of certain property as a security for the payment of a certain debt.'" *Topaz*,
24   839 P.2d at 612 (quoting *Nee v. L.C. Smith, Inc.*, 624 P.2d 4, 7 (Nev. 1981)).

25   Neither the quitclaim deed nor the board consent indicates that the HOA intended
26   to create a mortgage. (ECF No. 118-1 at 110, 112.) Quite the opposite. They indicate the
27   HOA entered a one-time transaction with Ravenstar, conveying to Ravenstar whatever
28   interest the HOA had in the Property by virtue of the Borrower's unpaid assessments.

(*Id.*) And Ravenstar does not even really offer any contrary argument; its only argument being a statement that the Court may impose an equitable mortgage. (ECF No. 123 at 5.) Thus, the undisputed evidence before the Court shows that Ravenstar's equitable mortgage crossclaim against the HOA also fails as a matter of law, and the Court will also grant the HOA's Motion as to this crossclaim.

In sum, the HOA is entitled to summary judgment on both crossclaims Ravenstar asserted against it.

### B. Nationstar's Motion

Nationstar both moves for summary judgment on its quiet title claim against Ravenstar and Heathman, and on the counterclaims for unjust enrichment and equitable mortgage Ravenstar asserted against Nationstar. (ECF No. 119.) The Court first addresses Nationstar's Motion as to Ravenstar's counterclaims, and then moves on to Nationstar's Motion as to its quiet title claim.

#### 1. Ravenstar's Counterclaims

Nationstar primarily argues it is entitled to summary judgment on Ravenstar's counterclaims because Ravenstar purchased the Property at its own risk, knowing it might remain subject to a first deed of trust, and there is no evidence that Nationstar and Ravenstar intended to create an equitable mortgage. (ECF No. 119 at 13-15.) Ravenstar counters that it spent money to acquire the Property, and then spent more money to maintain the Property, which benefitted Nationstar, and thus the Court may impose an equitable mortgage. (ECF No. 124 at 5.) The Court agrees with Nationstar.

Like its analysis *supra* as to Ravenstar's crossclaims against the HOA,[4] the Court finds Nationstar is entitled to summary judgment on both of Ravenstar's counterclaims because there is nothing inequitable about allowing Nationstar to retain any benefit it derived from Ravenstar, and there is no evidence these parties intended to create a mortgage. As to unjust enrichment, the Court agrees with Nationstar (ECF No. 128 at 8)

---

[4]The Court incorporates by reference its recitation of the elements of unjust enrichment and equitable mortgage in Section IV.A and does not repeat those elements here.

8

it would be inequitable to force Nationstar to reimburse Ravenstar for money Ravenstar spent on the Property—not the opposite, as would be required for Ravenstar to prevail on this claim. The quitclaim deed and board consent (ECF No. 118-1 at 110, 112), along with the deed from the HOA Sale conveying the Property to the HOA (ECF No. 119-15 at 2) all show that Ravenstar purchased whatever interest the HOA had in the Property as a speculative investment without any warranties. Equity and good conscience do not require Nationstar to reimburse Ravenstar for any money it spent on this speculative investment. As to the equitable mortgage claim, there is indeed no evidence that Nationstar ever intended to grant Ravenstar a mortgage, and Ravenstar does not really argue otherwise. (ECF No. 124 at 5.) Nationstar is accordingly entitled to summary judgment on both counterclaims that Ravenstar asserted against it.

### 2. Quiet Title

Nationstar makes several arguments as to why it is entitled to summary judgment on its quiet title claim. (ECF No. 119 at 5-13.) Because the Court finds Nationstar's futility of tender argument (*id.* at 5-8) persuasive, it declines to address the other arguments.[5]

As to its futility of tender argument, Nationstar specifically argues that its predecessor-in-interest BANA's counsel sent the HOA a letter, through Kern, requesting the amount of the superpriority portion of the HOA's lien on the Property and offering to pay it. (*Id.* at 6.) Kern replied with a letter refusing to provide the amount and contending the superpriority lien was not even triggered until the holder of the DOT foreclosed. (*Id.* at 7.) Nationstar further points to deposition testimony to the effect that Kern had a policy at the time of rejecting any attempted tenders if they were accompanied by language stating the check satisfied the lender's obligation in full. (*Id.*) Nationstar also offers evidence that BANA's counsel who sent Kern the letter knew Kern had a policy of rejecting

---

[5]The Court accordingly need not—and does not—consider the impact the certified question in *U.S. Bank, N.A., Tr. for Holders of J.P. Morgan Mortg. Tr. 2007-S3 v. S. Highlands Cmty. Ass'n*, --- F.3d ----, Case No. 19-15918, 2021 WL 2232491, at *7 (9th Cir. June 3, 2021) may have on Nationstar's argument based on *Shadow Canyon* (ECF No. 119 at 8-11).

9

any attempted tenders on only the superpriority portion of a homeowners' association lien. (*Id.* at 8.) Ravenstar does not actually respond to Nationstar's futility of tender argument, instead incorporating by reference the HOA's pertinent argument in its response to Nationstar's Motion.[6] (ECF No. 124 at 3-4.) In turn, the HOA counters that Nationstar insufficiently pleaded its futility of tender argument in its Complaint, and tender would not have been futile because Kern would have accepted payment in full of what it calculated the amount of the HOA's lien to be. (ECF No. 120 at 9-12.) The Court agrees with Nationstar.

The Court first finds that Nationstar adequately pleaded its futility of tender argument in its Complaint such that it did not waive the argument. Nationstar alleges in its Complaint that BANA sent Kern a letter offering to pay the superpriority portion of the HOA's lien, and Kern refused and subsequently held the HOA Sale. (ECF No. 1 at 6.) Nationstar goes on to allege that the HOA Sale was void for this reason. (*Id.* at 11.) While these allegations do not contain the phrase 'futility of tender' or any related variants of that phrase, these are the facts upon which Nationstar relies to make its futility of tender argument. Ravenstar thus had adequate notice of Nationstar's futility of tender argument. *See* Fed. R. Civ. P. 8(a)(2)-(3) (requiring only a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for the relief sought).

Moving to the merits of the argument, Nationstar has proffered evidence sufficient to establish that it began the process of attempting to tender but is properly excused from completing that process because tender would have been futile. Attorney Rock K. Jung sent Kern a letter requesting the amount of the HOA's superpriority lien, offering to pay that amount upon presentation of adequate proof from the HOA. (ECF No. 119-11 at 2-3, 6-7.) Kern wrote back, refusing to provide the superpriority amount, but stating that BANA could pay off the HOA's lien for $7,210.34. (*Id.* at 9.) Kern went on to write, "[b]ased

---

[6]As Nationstar and the HOA settled their claims against each other, the HOA's response to Nationstar's Motion is no longer live, but the Court will nonetheless consider the HOA's arguments as Ravenstar's arguments because Ravenstar incorporated them by reference and joined the HOA's response. (ECF Nos. 124 at 3-4, 125.)

on your past practices I anticipate you may calculate an amount equivalent to the 9-months of assessments, costs, expenses and fees. However, partial payment of the lien will not release the full lien and will not stop the Association's possible foreclosure." (*Id.* at 9-11.) Kern also testified at her deposition that she would not have accepted a payment from Mr. Jung for nine months of assessments if the check were accompanied by an assertion that the payment satisfied the lender's obligation to the HOA in full. (ECF No. 119-12 at 36-37.) And Mr. Jung testified consistently in his declaration prepared for another case, but proffered by Nationstar here, where he stated that, in his experience, Kern uniformly rejected checks for the superpriority portion of the homeowners' association's lien accompanied by a condition that the check fully satisfied the lender's obligation. (ECF No. 119-14 at 2-3.) The Court finds these facts establish that tender is excused in this case because it would have been futile for BANA to tender the superpriority amount to Kern with a condition on which it had the right to insist—that payment of the superpriority portion of the HOA's lien would fully satisfy BANA's obligation to the HOA and preserve its DOT.

As Nationstar argues, the evidence Nationstar proffers here brings this case within the realm of *7510 Perla Del Mar Ave Trust v. Bank of America, N.A.*, 458 P.3d 348, 349 (Nev. 2020) ("formal tender is excused when the evidence shows that the party entitled to payment had a known policy of rejecting such payments."). (ECF No. 119 at 2.) In *Perla Del Mar*, as here, the evidence established that the HOA's agent had a policy of rejecting any checks for less than the full lien amount, and the lender and its attorneys knew about the policy. *See* 458 P.3d at 351. "As a result, [BANA] was excused from making a formal tender in this instance because, pursuant to [Kern's] known policy, even if [BANA] had tendered a check for the superpriority portion of the lien, [Kern] would have rejected it." *Id.* at 352.

Subsequent cases interpreting *Perla Del Mar* further support the Court's finding that BANA was excused from tendering in this case because tender would have been futile. Most notably, this case is distinguishable from *CitiMortgage, Inc. v. Corte Madera*

11

*Homeowners Ass'n*, 962 F.3d 1103, 1109 (9th Cir. 2020), because there, the Ninth Circuit Court of Appeals "decline[d] to consider [the lender's] unpreserved futility-of-tender argument, raised for the first time on appeal[.]" Here, Nationstar raised its futility of tender argument based on *Perla Del Mar*, and the Court finds it persuasive. Moreover, the lender in *CitiMortgage* never filled out an online form that may have allowed it to determine the superpriority amount it owed, *see id.* at 1105, whereas here, Kern's letter in response to BANA's letter made clear Kern would not accept a check for the superpriority amount as full satisfaction of the amount owed (ECF No. 119-11 at 9-12). Similarly, the Ninth Circuit refused to allow the lender to raise a futility of tender argument based on *Perla Del Mar* for the first time in *U.S. Bank, N.A., Tr. for Banc of Am. Funding Corp. Mortg. Pass-Through Certificates, Series 2005-F v. White Horse Ests. Homeowners Ass'n*, 987 F.3d 858, 869 (9th Cir. 2021). Thus, the Ninth Circuit's recent reported opinions addressing *Perla Del Mar*'s futility of tender holding do not affect the Court's finding that tender would have been futile here.

Certain analogous, though unreported, decisions of the Nevada Supreme Court also support the Court's finding. Indeed, the Nevada Supreme Court found in an unpublished disposition that statements a homeowners' association agent made in an arbitration brief that the agent "did not believe the superpriority component of an HOA's lien came into existence until after the first deed of trust was foreclosed" sufficiently established that the agent had a known policy of rejection sufficient to excuse formal tender under *Perla Del Mar*. *U.S. Bank Nat'l Ass'n, Tr. to Wachovia Bank, N.A. v. SFR Invs. Pool 1, LLC*, 464 P.3d 125 (Table), 2020 WL 3003017, at *1 (Nev. 2020). That is the same position Kern took in her letter here. (ECF No. 119-11 at 9-12.) In addition, in *TRP Fund IV, LLC v. Bank of Am., N.A.*, 461 P.3d 159 (Table), 2020 WL 1903157, at *1 (Nev. 2020), the Nevada Supreme Court affirmed a district court's finding that a homeowners' association's foreclosure sale did not extinguish a deed of trust where the district court made a factual finding that the homeowners' association's agent had a practice of rejecting checks for only the superpriority amount. Kern had the same practice

as pertinent here. *See supra*; *see also SFR Invs. Pool 1, LLC v. Bank of Am., N.A.*, 459 P.3d 880 (Table), 2020 WL 1492829, at *1 (Nev. 2020) (affirming the district court's alternative holding that tender was excused as futile under *Perla Del Mar*).

Further, the HOA's counterargument—that tender was not futile because the HOA would have accepted payment in full of whatever it deemed the amount of its lien to be or applied a superpriority amount payment to the total lien balance Kern calculated provided it was unconditional—is wrong, as a matter of law. (ECF No. 120 at 10-12.) That is first because the "full superpriority amount consists of nine months of unpaid HOA dues and any unpaid charges for maintenance and nuisance abatement." *Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 623 (9th Cir. 2019) ("*Arlington West*"). The contrary view Kern expressed in her letter (ECF No. 119-11 at 9-12) turned out to be wrong. Moreover, "Bank of America was entitled to insist on the condition it imposed in its tender, which was that acceptance would satisfy the HOA's superpriority lien." *Arlington West*, 920 F.3d at 623. Thus, the counterargument the HOA offers in response to Nationstar's futility of tender argument is foreclosed by *Arlington West*.

In sum, BANA's failure to tender the amount of the superpriority lien on the Property is excused because tender would have been futile. Nationstar's DOT thus continues to encumber the Property. *See Perla Del Mar*, 458 P.3d at 351. Ravenstar and Heathman's interests in the Property, if any, are subject to Nationstar's DOT.

Nationstar also asserted a claim for injunctive relief against Ravenstar. (ECF No. 1 at 15-16.) A request for injunctive relief is not a separate cause of action. *See, e.g., In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007) ("Although denominated as a separate claim, count nine is not a separate cause of action but a request for injunctive relief."). But the Court nonetheless grants Nationstar's requested injunctive relief as specified herein in declaring that Nationstar's DOT continues to encumber the Property.

///

///

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant Highland Ranch Homeowners Association's motion for summary judgment on Ravenstar Investments, LLC's crossclaims (ECF No. 118) is granted as specified herein.

It is further ordered that Plaintiff Nationstar Mortgage LLC's motion for partial summary judgment (ECF No. 119) is granted as specified herein. The Court further declares that Nationstar's DOT continues to encumber the Property.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 11th Day of June 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE